# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Bankruptcy No. 05 B 14742 |
| | ) | Chapter 7 |
| DON JOSEPH ZORDAN, | ) | Judge John H. Squires |
| | ) | |
| Debtor. | ) | |
| | ) | |
| CONNEL JABAMONI, | ) | Adversary No. 05 A 01711 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DON JOSEPH ZORDAN, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This matter comes before the Court on the motion of Connel Jabamoni ("Jabamoni")
for summary judgment pursuant to Federal Rule of Bankruptcy Procedure 7056 and Federal
Rule of Civil Procedure 56 on his complaint seeking to except a debt owed by Don Joseph
Zordan (the "Debtor") from discharge pursuant to 11 U.S.C. §§ 523(a)(2), (a)(4), and (a)(6).
For the reasons set forth herein, the Court denies the motion. However, the Court narrows
the issues for trial under Rule 56(d) of the Federal Rules of Civil Procedure. Concurrently
herewith, the Court enters a Final Pretrial Order which sets this matter for trial on May 5,
2006 at 1:00 p.m.

-2-

## I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. It is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

## II. APPLICABLE SUMMARY JUDGMENT STANDARDS

In order to prevail on a motion for summary judgment, the movant must meet the statutory criteria set forth in Rule 56 of the Federal Rules of Civil Procedure, made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7056. Rule 56(c) reads in part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

FED. R. CIV. P. 56(c); *see also Estate of Allen v. City of Rockford*, 349 F.3d 1015, 1019 (7th Cir. 2003).

The primary purpose of granting a summary judgment motion is to avoid unnecessary trials when there is no genuine issue of material fact in dispute. *Trautvetter v. Quick*, 916 F.2d 1140, 1147 (7th Cir. 1990); *Farries v. Stanadyne/Chi. Div.*, 832 F.2d 374, 378 (7th Cir. 1987) (*quoting Wainwright Bank & Trust Co. v. Railroadmen's Fed. Savs. & Loan Ass'n of Indianapolis*, 806 F.2d 146, 149 (7th Cir. 1986)). Where the material facts are not in dispute, the sole issue is whether the moving party is entitled to a judgment as a matter of law. *ANR Advance Transp. Co. v. Int'l Bhd. of Teamsters, Local 710*, 153 F.3d 774, 777 (7th Cir. 1998).

-3-

On a motion for summary judgment, "[t]he court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) (internal quotation omitted). Summary judgment is the "put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir.) (internal quotation omitted), *cert. denied*, 126 S. Ct. 746 (2005).

In 1986, the United States Supreme Court decided a trilogy of cases that encourages the use of summary judgment as a means to dispose of factually unsupported claims. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). The burden is on the moving party to show that no genuine issue of material fact is in dispute. *Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 322; *Matsushita*, 475 U.S. at 585-86.

All reasonable inferences drawn from the underlying facts must be viewed in a light most favorable to the party opposing the motion. *Roger Whitmore's Auto. Servs., Inc. v. Lake County, Ill.*, 424 F.3d 659, 666-67 (7th Cir. 2005); *Parkins v. Civil Constructors of Ill., Inc.*, 163 F.3d 1027, 1032 (7th Cir. 1998). The existence of a material factual dispute is sufficient only if the disputed fact is determinative of the outcome under applicable law. *Anderson*, 477 U.S. at 248; *Fritcher v. Health Care Serv. Corp.*, 301 F.3d 811, 815 (7th Cir. 2002). "'Factual disputes that are irrelevant or unnecessary will not be counted.'" *Fritcher*, 301 F.3d at 815 (*quoting Anderson*, 477 U.S. at 248). "[S]ummary judgment is not an appropriate occasion for weighing the evidence; rather, the inquiry is limited to determining

-4-

if there is a genuine issue for trial." *Lohorn v. Michal*, 913 F.2d 327, 331 (7th Cir. 1990).

The Seventh Circuit has noted that trial courts must remain sensitive to fact issues where they

are actually demonstrated to warrant denial of summary judgment. *Opp v. Wheaton Van

Lines, Inc.*, 231 F.3d 1060, 1065-66 (7th Cir. 2000); *Szymanski v. Rite-Way Lawn Maint. Co.*,

231 F.3d 360, 364 (7th Cir. 2000).

    The "party seeking summary judgment always bears the initial responsibility of

informing the . . . court of the basis for its motion, and identifying those portions of the

'pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material

fact." *Celotex*, 477 U.S. at 323 (*quoting* FED. R. CIV. P. 56(c)). Once the motion is

supported by a prima facie showing that the moving party is entitled to judgment as a matter

of law, a party opposing the motion may not rest upon the mere allegations or denials in its

pleadings; rather, its response must show that there is a genuine issue for trial. *Anderson*,

477 U.S. at 248; *Celotex*, 477 U.S. at 323; *Matsushita*, 475 U.S. at 587; *Patrick v. Jasper

County*, 901 F.2d 561, 565 (7th Cir. 1990).

-5-

Rule 56(d)[1] provides a method whereby a court can narrow issues and facts for trial after denying in whole or in part a motion properly brought under Rule 56. *Capitol Records, Inc. v. Progress Record Distrib., Inc.*, 106 F.R.D. 25, 29 (N.D. Ill. 1985).

Local Bankruptcy Rule 7056-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Northern District of Illinois, which deals with summary judgment motions, was modeled after LR56.1 of the Local Rules of the United States District Court for the Northern District of Illinois. Hence, the case law construing LR56.1 and its predecessor Local Rule 12 applies to Local Bankruptcy Rule 7056-1.

Pursuant to Local Bankruptcy Rule 7056, a motion for summary judgment imposes special procedural burdens on the parties. Specifically, the Rule requires the moving party to supplement its motion and supporting memorandum with a statement of undisputed material facts ("7056-1 statement"). The 7056-1 statement "shall consist of short numbered

---

[1] Rule 56(d) provides as follows:

> If on motion under this rule judgment is not rendered upon the whole case or for all the relief asked and a trial is necessary, the court at the hearing of the motion, by examining the pleadings and the evidence before it and by interrogating counsel, shall if practicable ascertain what material facts exist without substantial controversy and what material facts are actually and in good faith controverted. It shall thereupon make an order specifying the facts that appear without substantial controversy, including the extent to which the amount of damages or other relief is not in controversy, and directing such further proceedings in the action as are just. Upon the trial of the action the facts so specified shall be deemed established, and the trial shall be conducted accordingly.

FED. R. CIV. P. 56(d).

-6-

paragraphs, including within each paragraph specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph. Failure to submit such a statement constitutes grounds for denial of the motion." Local Bankr.R. 7056-1B.

The party opposing a summary judgment motion is required by Local Bankruptcy Rule 7056-2 to respond ("7056-2 statement") to the movant's 7056-1 statement, paragraph by paragraph, and to set forth any material facts that would require denial of summary judgment, specifically referring to the record for support of each denial of fact. Local Bankr.R. 7056-2. The opposing party is required to respond "to each numbered paragraph in the moving party's statement" and to make "specific references to the affidavits, parts of the record, and other supporting materials relied upon[.]" Local Bankr.R. 7056-2A(2)(a). Most importantly, "[a]ll material facts set forth in the [7056-1] statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party." Local Bankr.R. 7056-2B.

As required, Jabamoni filed a 7056-1 statement that complies with the Local Rule. It includes numbered paragraphs outlining undisputed material facts along with specific references to supporting exhibits. In addition, Jabamoni filed his own affidavit in support of the motion.

For reasons unknown to the Court, the Debtor elected not to file a response to Jabamoni's 7056-1 statement. Nor has he filed any type of document that bears any semblance, either in form or substance, to a 7056-2 statement. The only document the Debtor filed was a response to the motion for summary judgment. Standing alone, this

-7-

response fails to address any of the undisputed facts asserted by Jabamoni in his 7056-1

statement.[2] The Debtor's response, or lack thereof, is entirely insufficient for compliance

with Rule 7056 and does not serve the purpose of framing the pleadings at bar or making

specific references to those parts of the record on which the party opposing the summary

judgment relies to show a material factual dispute. *See Davis v. Ill. State Police Fed. Credit

Union (In re Davis)*, 244 B.R. 776, 782 (Bankr. N.D. Ill. 2000). The Court is not obliged to

sift through the record to ferret out those parts relied upon by the Debtor in opposition to the

motion for summary judgment. *See id.*

The Court is mindful of the fact that the Debtor is a pro se litigant and that it is the

"well-established duty of the . . . court to ensure that the claims of a *pro se* litigant are given

a fair and meaningful consideration." *Palmer v. City of Decatur, Ill.*, 814 F.2d 426, 428-29

(7th Cir. 1987) (internal quotation omitted); *see also Duncan v. Duckworth*, 644 F.2d 653,

655 (7th Cir. 1981) (finding that "pro se pleadings [are] held to less stringent standards than

those prepared by counsel"). Even so, the Court cannot properly disregard the requirements

of Rule 7056. "Although civil litigants who represent themselves ("pro se") benefit from

various procedural protections not otherwise afforded to the ordinary attorney-represented

litigant, pro se litigants are not entitled to a general dispensation from the rules of procedure

---

[2] In contrast to the multi-paged documents that Jabamoni submitted in support of his motion for summary judgment, the Debtor's response consists of only five paragraphs on a total of two pages. Prior to listing his main reason as to why the motion should be denied, the Debtor states, in part, in paragraph two as follows: "[w]ithout admitting to or denying any of the material contained in Attorney Dopke's Memorandum, Defendant Zordan assert [sic] the Plaintiff's pleading is totally without merit . . . ." (Debtor's Resp. to Mot. for Summ. J. ¶ 2.)

-8-

or court imposed deadlines." *Jones v. Phipps*, 39 F.3d 158, 163 (7th Cir. 1994) (citations omitted).

The Seventh Circuit has upheld strict application of local rules regarding motions for summary judgment. *See Dade v. Sherwin-Williams Co.*, 128 F.3d 1135, 1140 (7th Cir. 1997); *Feliberty v. Kemper Corp.*, 98 F.3d 274, 277-78 (7th Cir. 1996); *Bourne Co. v. Hunter Country Club, Inc.*, 990 F.2d 934, 938 (7th Cir. 1993); *Schulz v. Serfilco, Ltd.*, 965 F.2d 516, 519 (7th Cir. 1992); *Maksym v. Loesch*, 937 F.2d 1237, 1240-41 (7th Cir. 1991). Compliance with Local Bankruptcy Rules 7056-1 and 7056-2 is not a mere technicality. Courts rely greatly on the information in these statements in separating the facts about which there is a genuine dispute from those about which there is none. *Am. Ins. Co. v. Meyer Steel Drum, Inc.*, No. 88 C 0005, 1990 WL 92882, at *7 (N.D. Ill. June 27, 1990). The statements required by Rule 7056 are not merely superfluous abstracts of evidence. Rather, they

> are intended to alert the court to precisely what factual questions are in dispute and point the court to specific evidence in the record that supports a party's position on each of these questions. They are, in short, roadmaps, and without them the court should not have to proceed further, regardless of how readily it might be able to distill the relevant information from the record on its own.

*Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 923 (7th Cir. 1994). Because the Debtor failed to comply with Rule 7056-2, all material facts in Jabamoni's 7056-1 statement are deemed admitted and are set forth in Section III *infra* of the instant Memorandum Opinion.[3]

---

[3] In the memorandum filed in support of his motion for summary judgment, Jabamoni, to his credit, specifically outlined the Debtor's obligations under 7056-2 and the consequences for his failure to comply. *See* Jabamoni's Mem. in Supp. of Mot. for Summ. J., p. 4, n.2; *see also Timms v. Frank*, 953 F.2d 281, 285 (7th Cir. 1992) (holding that a pro se litigant must be informed of the consequences of failing to properly respond to a motion

-9-

## III.  UNDISPUTED FACTS AND BACKGROUND

The following facts are undisputed or, as discussed *supra*, have been deemed admitted pursuant to Local Bankruptcy Rule 7056-2B.  Prior to 1996, the Debtor and Jabamoni entered into an agreement (the "Agreement") to rehabilitate real estate and sell it for a profit. (7056-1 statement ¶ 6 and Ex. A ¶ 1; Jabamoni Aff. ¶ 4.)  Under the Agreement, Jabamoni was required to provide the Debtor with the money necessary to purchase the properties targeted for rehabilitation. (7056-1 statement ¶ 6a and Ex. A ¶ 2(a); Jabamoni Aff. ¶ 4(a).)  The Debtor's duties consisted of supervising the rehabilitation process and the eventual sale. (7056-1 statement ¶ 6b and Ex. A ¶ 2(b); Jabamoni Aff. ¶ 4(b).)  Once the property was sold, the proceeds were to first be used to reimburse Jabamoni for any money he provided the Debtor to purchase and rehabilitate the property. (7056-1 statement ¶ 6c and Ex. A ¶ 2(c); Jabamoni Aff. ¶ 4(c).)  The remaining net proceeds were to be divided equally between Jabamoni and the Debtor.  (*Id.*)  In accordance with the terms of the Agreement, Jabamoni paid $163,578.27 to the Debtor.  (7056-1 statement ¶ 7 and Ex. A ¶ 8; Jabamoni Aff. ¶ 5.)

After the parties entered into the Agreement, the Debtor performed a series of acts that allegedly violated the terms of the Agreement.  (7056-1 statement ¶¶ 8-11 and Ex. A ¶¶ 3-6; Jabamoni Aff. ¶¶ 6-10.)  The Debtor placed title to real estate purchased with monies provided by Jabamoni into trust accounts such that the beneficiaries were entities under the Debtor's control.  (7056-1 statement ¶ 8 and Ex. A ¶ 4(a); Jabamoni Aff. ¶ 6.)  He also

---

for summary judgment).  Thus, the Debtor has no excuse for his failure to comply with Rule 7056-2.

-10-

misrepresented and concealed from Jabamoni the fact that he had received proceeds from the sale of certain real estate that was subject to the Agreement. (7056-1 statement ¶ 9 and Ex. A ¶ 4(b); Jabamoni Aff. ¶ 7.)  Unbeknownst to Jabamoni, the Debtor placed these proceeds in a concealed bank account unrelated to the parties' business enterprise and under the Debtor's sole control. (7056-1 statement ¶ 10 and Ex. A ¶ 4(c); Jabamoni Aff. ¶ 8.)  The Debtor also asserted a claim against the proceeds for the payment of a fee that was not provided for in the Agreement. (7056-1 statement ¶ 11 and Ex. A ¶ 4(d); Jabamoni Aff. ¶ 9.)

Jabamoni filed a lawsuit against the Debtor and other defendants in the Circuit Court of Kane County, Illinois. (7056-1 statement ¶ 5 and Ex. C, p. 1; Jabamoni Aff. ¶ 11.) Therein, Jabamoni pled six causes of action of which four survived challenge: breach of contract, breach of fiduciary duty, constructive trust, and wrongful conversion.[4] (7056-1 statement ¶ 13, Exs. C, p. 9 & D.)  The Debtor filed an answer wherein he denied any wrongdoing.  (7056-1 statement ¶¶ 16 & 17 and Exs. C, p. 9 & G.)  The Debtor was represented by counsel when his answer was filed. (7056-1 statement ¶ 18 and Ex. ¶ G.)

After the trial, the state court issued an order on November 30, 1998 (the "November 1998 Order") that found in favor of Jabamoni on the breach of fiduciary duty and constructive trust causes of action. (7056-1 statement ¶ 19 and Ex. A.)  Although the document is entitled "Order," it includes the state court's findings.[5] (7056-1 statement Ex.

---

[4]  An order was entered on April 8, 1999 dismissing the fraud and negligent misrepresentation counts in Jabamoni's complaint. (7056-1 statement ¶ 13 and Ex. C, p. 9.)

[5]  The Court notes that the findings made in the November 1998 Order pertain to a "defendant."  The state court never specifically identifies the Debtor by name as the

-11-

A.)   In particular, the state court found that the Debtor "engaged in conduct revealing his intention not to be bound by the [A]greement" after it was executed. (*Id.*) The state court further found that the Debtor: (1) placed title to real estate purchased with monies delivered to him by Jabamoni in trusts, the beneficiaries of which were entities controlled by the Debtor in such a manner as to deprive Jabamoni of any right or interest in the real estate; (2) misrepresented and concealed the fact that proceeds had been received from the sale of certain real estate subject to the Agreement; (3) placed proceeds received from the sale of real estate in a bank account unrelated to the parties' business that was concealed from Jabamoni and controlled solely by the Debtor; and (4) asserted a claim upon the proceeds for payment of a fee not contemplated by the Agreement. (7056-1 statement Ex. A ¶ 4(a)-(d).) The state court also found that the Debtor "[c]onverted to his personal use certain proceeds realized from the sale of real estate." (*Id.* ¶ 6(b).)  The court ordered the Debtor to repay the sum of $163,578.27 to Jabamoni. (7056-1 statement ¶ 20 and Ex. A ¶ B; Jabamoni Aff. ¶ 13.)  The court rescinded the Agreement and continued the matter for the purpose, in part, of reassigning the case for trial on the remaining non-equity counts of the complaint. (7056-1 statement ¶ 20 and Ex. A ¶¶ A & C; Jabamoni Aff. ¶ 13.)

---

"defendant" to which its findings are to be applied.  The only time the Debtor is directly identified in the November 1998 Order is with respect to the court ordering "defendant Donald J. Zordan" to return the sum of $163,578.27 to Jabamoni. Despite this omission, the Court can reasonably conclude, based on the allegations asserted in the state court complaint, the Debtor's answer, and the state court's use of the word "his" in reference to the "defendant" that the state court's findings pertain to the Debtor because he was the only individual defendant named in the state court proceedings.  The other defendants were corporate or legal entities. (7056-1 statement Exs. C & D.)

-12-

On March 15, 1999, the state court granted a motion made by the Debtor's counsel requesting to withdraw from the case. (7056-1 statement ¶ 22 and Ex. C, p. 12.) The Debtor filed his pro se appearance the same day. (*Id.*)

A second trial was held and concluded on May 10, 1999 on the issue of punitive damages. (7056-1 statement ¶ 26 and Ex. B.)  Prior to its commencement, Jabamoni agreed to limit his recovery to the demand for punitive damages in the remaining untried counts of his complaint. (7056-1 statement ¶ 25; Jabamoni Aff. ¶ 15.) The state court found in favor of Jabamoni and entered an order (the "May 1999 Order") directing the Debtor to pay Jabamoni punitive damages in the amount of $98,000.00.  (7056-1 statement ¶ 26 and Ex. B; Jabamoni Aff. ¶ 14.)

On June 8, 1999, the Debtor filed an appeal of the November 1998 Order and the May 1999 Order. (7056-1 statement ¶ 28 and Ex. C, p. 13.)  The appeal was dismissed on July 21, 1999. (7056-1 statement ¶ 29 and Ex. C, p. 14.)  Both the November 1998 Order and the May 1999 Order are final. (7056-1 statement ¶ 30 and Ex. C.)

On April 18, 2005, the Debtor filed a bankruptcy petition under Chapter 7 of the Bankruptcy Code. (7056-1 statement ¶ 1.) According to Jabamoni's calculations, the Debtor was indebted to Jabamoni in the amount of $407,074.54 ($163,578.27 in actual damages; $98,000.00 in punitive damages; and $145,496.27 in post-judgment interest) which was unpaid as of the petition filing date. (7056-1 statement ¶¶ 33 & 34 and Ex. H; Jabamoni Aff. ¶ 18.) The Debtor has not made any payment to Jabamoni pursuant to the November 1998 Order and the May 1999 Order. (7056-1 statement ¶¶ 31 & 32; Jabamoni Aff. ¶¶ 16 & 17.)

-13-

On August 5, 2005, Jabamoni filed this adversary proceeding wherein he alleges in a single count that the judgments issued against the Debtor in the state court proceedings are excepted from discharge pursuant to 11 U.S.C. §§ 523(a)(2), (a)(4), and (a)(6).[6] Jabamoni asserts that the findings made in the state court's November 1998 Order support a determination that the debt owed to him by the Debtor is nondischargeable under each provision. The Debtor provided Jabamoni's counsel with an answer to the complaint that has never been filed with the Court. (Jabamoni's Mem., p. 9 and Ex. 1.) In it, the Debtor failed to respond to each numbered paragraph in the complaint as required under Local Bankruptcy Rule 5005-3A. (Jabamoni's Mem. Ex. 1.) The Debtor's only denial of the averments in the complaint was that the state court never issued an order or made a finding concerning his liability under the fraud cause of action.[7] (*Id.* ¶¶ 2.03, 2.04, 4.)

---

[6] While Jabamoni's complaint specifically references § 523(a)(2) in whole as the statute under which he is requesting relief, he actually cites to and relies on the exceptions listed in § 523(a)(2)(A) as the basis for relief. *See* Comp. ¶ 21 ("[Jabamoni's claim . . . is not dischargeable pursuant to 11 U.S.C. § 523(a)(2), because such claim is for money and property which the Debtor obtained by false pretenses, false representations and actual fraud . . . ."). The Court will therefore review Jabamoni's complaint under § 523(a)(2)(A).

[7] Rule 8(b) of the Federal Rules of Civil Procedure, as adopted by Rule 7008(a) of the Federal Rules of Bankruptcy Procedure, requires a party to "state in short and plain terms the party's defenses to each claim asserted and . . . admit or deny the averments upon which the adverse party relies." FED. R. CIV. P. 8(b); *see also* Local Bankruptcy Rule 5005-3A. Upon a failure to respond in this manner, Rule 8(d) provides that the averments that are not denied are deemed admitted. FED. R. CIV. P. 8(d); *see also, e.g., Shakman v. Democratic Org. of Cook County*, 533 F.2d 344, 352 (7th Cir. 1976). As a result of his failure, the Debtor has effectively admitted that the debt is not dischargeable based on the exceptions listed in §§ 523(a)(4) and (a)(6). Nonetheless, Jabamoni is required to demonstrate entitlement to summary judgment as a matter of law by proving the required elements of each cause of action.

-14-

On October 13, 2005, Jabamoni filed the instant motion for summary judgment. Relying on the doctrine of collateral estoppel, Jabamoni contends that the Court should conclude, based on the state court's findings in the November 1998 Order, that the debt is excepted from discharge under the actual fraud exception of § 523(a)(2), the fiduciary capacity exception of § 523(a)(4), and the willful and malicious injury exception of § 523(a)(6).

## IV. <u>DISCUSSION</u>

### A.    Collateral Estoppel

Jabamoni seeks to utilize the doctrine of collateral estoppel to preclude the Debtor from disputing any material issues of fact and from asserting any defenses based upon the findings made by the state court in the November 1998 Order. The doctrine of collateral estoppel precludes the relitigation of issues previously determined in another court. *Brown v. Felsen*, 442 U.S. 127, 139 n.10 (1979); *Jensen v. Foley*, 295 F.3d 745, 748 (7th Cir. 2002) (finding that collateral estoppel "prevents a party from relitigating an issue that it has previously litigated and lost"). "Collateral estoppel . . . has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." *Parkland Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979). The United States Supreme Court has held that collateral estoppel principles apply to proceedings involving the dischargeability of a debt under 11 U.S.C. § 523(a). *Grogan v. Garner*, 498 U.S. 279, 285 n.11 (1991) ("[C]ollateral estoppel principles do indeed apply in discharge exception proceedings pursuant to § 523(a).").

-15-

Hence, "where a court of competent jurisdiction has previously ruled against a debtor upon specific issues of fact that independently comprise elements of a creditor's nondischargeability claim, the debtor may not seek to relitigate those underlying facts in bankruptcy court, provided that the issues involved had been 'actually litigated.'" *French, Kezelis & Kominiarek, P.C. v. Carlson (In re Carlson)*, 224 B.R. 662, 663 (Bankr. N.D. Ill. 1998), *aff'd*, No. 99 C 6020, 2000 WL 226706 (N.D. Ill. Feb. 22, 2000), *aff'd*, No. 00-1720, 2001 WL 1313652 (7th Cir. Oct. 23, 2001).

Federal courts must give full faith and credit to the collateral estoppel effects of state court judgments under state standards. 28 U.S.C. § 1738; *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985); *Am. Nat'l Bank & Trust Co. v. Reg'l Transp. Auth.*, 125 F.3d 420, 430 (7th Cir. 1997). Bankruptcy courts are bound by this obligation. *See Gouveia v. Tazbir*, 37 F.3d 295, 300 (7th Cir. 1994). "[T]he preclusive effect of a state court judgment in a federal case is a matter of state rather than of federal law." *Brokaw v. Weaver*, 305 F.3d 660, 669 (7th Cir. 2002) (*quoting CIGNA Healthcare of St. Louis, Inc. v. Kaiser*, 294 F.3d 849, 856 (7th Cir. 2002)). Because this matter presents a question regarding the collateral estoppel effect of an Illinois state court order, the Court must apply the Illinois law of collateral estoppel. *See In re Catt*, 368 F.3d 789, 790-91 (7th Cir. 2004) ("The effect of a judgment in subsequent litigation is determined by the law of the jurisdiction that rendered the judgment. . . .").

Under Illinois law, the essential elements for application of collateral estoppel are: (1) the issue decided in the prior adjudication must be identical to the issue in the current action; (2) the party against whom the estoppel is asserted must have been a party or in

-16-

privity with a party to the prior case; and (3) there must have been a final judgment on the

merits in the prior action. *Kalush v. Deluxe Corp.*, 171 F.3d 489, 493 (7th Cir. 1999) (*citing*

*Herzog v. Lexington Twp.*, 657 N.E.2d 926, 929-30 (Ill. 1995)); *see also Nowak v. St. Rita*

*High Sch.*, 757 N.E.2d 471, 477 (Ill. 2001); *DuPage Forklift Serv. v. Material Handling*

*Servs., Inc.*, 744 N.E.2d 845, 849 (Ill. 2001). In Illinois, collateral estoppel is "limited to the

precise factual or legal issues actually litigated and decided when a prior order was entered."

*People v. Williams*, 563 N.E.2d 385, 392 (Ill. 1990).

## B.    Exceptions to the Discharge of a Debt

The party seeking to establish an exception to the discharge of a debt bears the burden

of proof. *Selfreliance Fed. Credit Union v. Harasymiw (In re Harasymiw)*, 895 F.2d 1170,

1172 (7th Cir. 1990); *Banner Oil Co. v. Bryson (In re Bryson)*, 187 B.R. 939, 961 (Bankr.

N.D. Ill. 1995). The United States Supreme Court has held that the burden of proof required

to establish an exception to discharge is a preponderance of the evidence. *Grogan*, 498 U.S.

at 291; *see also In re McFarland*, 84 F.3d 943, 946 (7th Cir. 1996); *In re Thirtyacre*, 36 F.3d

697, 700 (7th Cir. 1994). Exceptions to discharge are to be construed strictly against a

creditor and liberally in favor of a debtor in order to further the policy of providing a debtor

with a fresh start in bankruptcy. *Shaw Steel v. Morris (In re Morris)*, 223 F.3d 548, 552 (7th

Cir. 2000); *Kolodziej v. Reines (In re Reines)*, 142 F.3d 970, 972-73 (7th Cir. 1998);

*Goldberg Secs. v. Scarlata (In re Scarlata)*, 979 F.2d 521, 524 (7th Cir. 1992); *In re*

*Zarzynski*, 771 F.2d 304, 306 (7th Cir. 1985). "The statute is narrowly construed so as not

to undermine the Code's purpose of giving the honest but unfortunate debtor a fresh start."

-17-

*Park Nat'l Bank & Trust of Chi. v. Paul (In re Paul)*, 266 B.R. 686, 693 (Bankr. N.D. Ill.

2001).

**C.    11 U.S.C. § 523(a)(2)(A)**

Section 523 of the Bankruptcy Code enumerates specific, limited exceptions to the

dischargeability of debts. Section 523(a)(2)(A) provides as follows:

> (a) A discharge under section 727 . . . does not discharge an
> individual debtor from any debt–
>
>> (2) for money, property, services, or an
>> extension, renewal, or refinancing of credit, to
>> the extent obtained by–
>>
>>> (A) false pretenses, a false
>>> representation, or actual fraud,
>>> other than a statement
>>> respecting the debtor's or an
>>> insider's financial condition[.]

11 U.S.C. § 523(a)(2)(A). Section 523(a)(2)(A) lists three separate grounds for

dischargeability: actual fraud, false pretenses, and a false representation. *Id.*; *Bletnitsky v.*

*Jairath (In re Jairath)*, 259 B.R. 308, 314 (Bankr. N.D. Ill. 2001). Although Jabamoni's

complaint requests relief as to each ground, his motion for summary judgment with respect

to § 523(a)(2)(A) is based solely on the actual fraud exception.[8] Even though the elements

---

[8] In the memorandum filed in support of his motion for summary judgment, Jabamoni states as follows: "[i]n this Motion, we limit our case for collateral estoppel to one of actual fraud under 11 U.S.C. § 523(a)(2), because the Circuit Court's Orders did not contain a finding that the Debtor relied on [Jabamoni's] misrepresentations." (Jabamoni's Mem., p. 10 n.4.) The Court notes that Jabamoni incorrectly references the Debtor's reliance on Jabamoni's misrepresentations rather than Jabamoni's reliance on the Debtor's misrepresentations.

-18-

for each exception vary under common law, courts in the Seventh Circuit are required to

apply a single test to all three grounds. *Jairath*, 259 B.R. at 314.

The Seventh Circuit has made it clear that misrepresentation and reliance thereon are

not always required to establish actual fraud. *McClellan v. Cantrell*, 217 F.3d 890, 894 (7th

Cir. 2000). Indeed, the Seventh Circuit recently defined the term "fraud":

> 'Fraud is a generic term, which embraces all the multifarious
> means which human ingenuity can devise and which are
> resorted to by one individual to gain an advantage over
> another by false suggestions or by the suppression of truth.
> No definite and invariable rule can be laid down as a general
> proposition defining fraud, and it includes all surprise, trick,
> cunning, dissembling, and any unfair way by which another
> is cheated.'

*Id.* at 893 (*quoting Stapleton v. Holt*, 250 P.2d 451, 453-54 (Okla. 1952)). "Actual fraud"

is not limited to misrepresentation, but may encompass "any deceit, artifice, trick, or design

involving direct and active operation of the mind, used to circumvent and cheat another."

*Id.* (internal quotation omitted). Hence, a different analysis must be utilized when a creditor

alleges actual fraud. *Id.* The *McClellan* court opined that because common law fraud does

not always take the form of a misrepresentation, a creditor need not allege misrepresentation

and reliance thereon to state a cause of action for actual fraud under § 523(a)(2)(A). *Id.*

Rather, the creditor must establish the following: (1) a fraud occurred; (2) the debtor intended

to defraud the creditor; and (3) the fraud created the debt that is the subject of the discharge

dispute. *Id.* The fraud exception under § 523(a)(2)(A) does not reach constructive frauds,

only actual ones. *Id.* at 894. "Though cases often say that exclusions from dischargeability

should be narrowly construed, we have emphasized that they 'serve vital functions.'" *Id.* at

-19-

893 (quoting *Mayer v. Spanel Int'l Ltd.*, 51 F.3d 670, 674 (7th Cir. 1995) (citations omitted)).

"'Congress concluded that preventing fraud is more important than letting defrauders start

over with a clean slate, and we must respect that judgment.'" *Id.*

Jabamoni argues that his claim against the Debtor that arose from the November 1998

Order and the May 1999 Order was found by the state court to result from the Debtor's fraud

and is therefore nondischargeable under § 523(a)(2)(A). "In the Seventh Circuit, collateral

estoppel can apply to cases in which a court hearing a nonbankruptcy case has determined

factual issues relevant to a subsequent non-dischargeability claim, provided that the non-

bankruptcy court used the same standards that a bankruptcy court would have used in

determining the issues which are subsequently given collateral estoppel effect." *Katahn*

*Assocs., Inc. v. Wien (In re Wien)*, 155 B.R. 479, 484 (Bankr. N.D. Ill. 1993). "Although

Congress has vested jurisdiction to determine the dischargeability of debt in the bankruptcy

court, it does not mean that every last fact issue bearing on dischargeability must be re-

litigated, re-tried, and again decided when there has been a prior determination of the same

facts by a court of competent jurisdiction." *Id.* "If a state court finds that a debtor

intentionally injured a creditor, the bankruptcy court is required under the doctrine of

collateral estoppel to hold the debt nondischargeable." *Prairie Eye Ctr. v. Butler (In re*

*Butler)*, 297 B.R. 741, 747-48 (Bankr. C.D. Ill. 2003).

Jabamoni asserts that the state court's findings that the Debtor engaged in particular

acts—that he misrepresented and concealed the fact that proceeds subject to the Agreement

had been received, that he placed proceeds from the sale of certain real estate into a bank

account unrelated to the business and unknown to Jabamoni, and that he asserted a claim

-20-

against the proceeds for the payment of a fee not allowed under the Agreement—fall within the scope of the Seventh Circuit's definition of actual fraud. Jabamoni additionally maintains that the state court found that the Debtor had in fact committed acts of fraud, despite the Debtor's denial to the contrary. According to Jabamoni, the state court imposed the "extraordinary remedy of rescission" *(see* Jabamoni's Mem., p. 11) with respect to the breach of fiduciary duty count of the complaint which is an equitable remedy for fraud. Thus, Jabamoni contends these factors make it "reasonably certain that the [state court] was convinced that the Debtor was guilty of fraud, among other wrongful acts." (*Id.*)

The Court does not agree with Jabamoni's interpretation of the November 1998 Order. The state court never expressly ruled on Jabamoni's allegation of fraud but merely found that the Agreement was breached by the Debtor and should be rescinded. The word "fraud" was not used in the November 1998 Order. Moreover, the state court dismissed the fraud count from the complaint. Thus, the Court cannot conclude that the state court's findings establish all of the necessary elements for nondischargeability based on actual fraud.

Although the state court made a finding that the Debtor made a misrepresentation to Jabamoni concerning the receipt of certain sale proceeds, it did not expressly find that the Debtor possessed the intent to defraud Jabamoni. The additional findings that the state court made with respect to the Debtor's intent were that "[s]ubsequent to the entry of the [A]greement, the defendant engaged in conduct revealing his intention not to be bound by the [A]greement" (7056-1 statement Ex. A ¶ 3) and that the Debtor "[m]isrepresented and concealed the fact that proceeds had been received from the sale of certain real estate subject to the [A]greement." (*Id.* ¶ 4(b).) These findings fall short of establishing the requisite level

-21-

of intent necessary to determine that the Debtor intended to defraud Jabamoni. To conclude, as Jabamoni argues, that the Debtor intended to defraud him would inevitably require the Court to weigh the evidence and draw inferences from the state court findings that are not expressly contained in the limited record furnished here. An inference drawn from another court's order is not appropriate when ruling on a motion for summary judgment. Moreover, none of the statements made in Jabamoni's 7056-1 statement specifically focuses on the Debtor's intentions.

As such, Jabamoni has not demonstrated that he is entitled to summary judgment under the actual fraud exception of § 523(a)(2)(A) as a matter of law based on the doctrine of collateral estoppel. Accordingly, the Court denies the motion with respect to Jabamoni's cause of action pursuant to § 523(a)(2)(A).

**D.     11 U.S.C. § 523(a)(4)**

Section 523(a)(4) of the Bankruptcy Code provides that a debtor cannot discharge any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny[.]" 11 U.S.C. § 523(a)(4). The meaning of these terms is a question of federal law. *In re McGee*, 353 F.3d 537, 540 (7th Cir. 2003). In order for Jabamoni to prevail under § 523(a)(4), he must prove that the Debtor committed (1) fraud or defalcation while acting as a fiduciary; or (2) embezzlement; or (3) larceny. *See* 11 U.S.C. § 523(a)(4). Although Jabamoni's complaint alleges nondischargeability under each of these grounds, his motion argues that the debt is based on the Debtor's acts while acting as a fiduciary. Thus, the Court will not discuss the embezzlement or larceny prongs of tortious conduct proscribed under § 523(a)(4).

-22-

### 1. Express Trust or Fiduciary Relationship

A threshold inquiry is whether an express trust or a fiduciary obligation runs from the Debtor to Jabamoni under the facts of this matter. The existence of an express trust or fiduciary relationship is tested under federal law standards. *O'Shea v. Frain (In re Frain)*, 230 F.3d 1014, 1017 (7th Cir. 2000). An express trust requires an explicit declaration of trust, a clearly defined trust res, and an intent to create a trust. *CFC Wireforms, Inc. v. Monroe (In re Monroe)*, 304 B.R. 349, 358 (Bankr. N.D. Ill. 2004). The intent to create a trust relationship is a key element in determining the existence of an express trust. *Id.*

A § 523(a)(4) cause of action can be based on a fiduciary relationship other than one arising from an express trust. *See Frain*, 230 F.3d at 1017; *In re Marchiando*, 13 F.3d 1111, 1115-16 (7th Cir. 1994). "A fiduciary relationship may arise separate from an express trust, . . . but it is the substance and character of the debt relationship that determines whether such a fiduciary relationship exists." *Monroe*, 304 B.R. at 358. The Seventh Circuit has found that a fiduciary relationship exists for purposes of § 523(a)(4) when there is "a difference in knowledge or power between fiduciary and principal which . . . gives the former a position of ascendancy over the latter." *Marchiando*, 13 F.3d at 1116; *see also In re Woldman*, 92 F.3d 546, 547 (7th Cir. 1996) ("[S]ection 523(a)(4) reaches only those fiduciary obligations in which there is substantial inequality in power or knowledge. . . ."). For example, a lawyer-client relationship, a director-shareholder relationship, and a managing partner-limited partner relationship all require the principal to "'repose a special confidence in the fiduciary.'" *Frain*, 230 F.3d at 1017 (*quoting Marchiando*, 13 F.3d at 1116).

-23-

However, not all fiduciary relationships fall within the purview of § 523(a)(4). *Woldman*, 92 F.3d at 547. A fiduciary relation qualifies under § 523(a)(4) only if it "imposes real duties in advance of the breach. . . ." *Marchiando*, 13 F.3d at 1116. In other words, the fiduciary's obligation must exist prior to the alleged wrongdoing. *Id.*

### 2. Defalcation

"Defalcation" is not a defined term in the Bankruptcy Code. One court has defined defalcation within the context of § 523(a)(4) as "the misappropriation of trust funds held in any fiduciary capacity, and the failure to properly account for such funds." *Strube Celery & Vegetable Co., Inc. v. Zois (In re Zois)*, 201 B.R. 501, 506 (Bankr. N.D. Ill. 1996) (internal quotation omitted); *see also Blackhawk B.M.X., Inc. v. Anderson (In re Anderson)*, 64 B.R. 331, 334 (Bankr. N.D. Ill. 1986). An objective standard is used to determine a defalcation, and intent or bad faith is not required. *Green v. Pawlinski (In re Pawlinski)*, 170 B.R. 380, 389 (Bankr. N.D. Ill. 1994). Mere negligence does not constitute defalcation. *Meyer v. Rigdon*, 36 F.3d 1375, 1382-85 (7th Cir. 1994) (construing defalcation under § 523(a)(4) and § 523(a)(11)). That is, although the Seventh Circuit has not clearly defined the level of tortious conduct necessary to constitute a defalcation in the context of § 523(a)(4), it has required something more than mere negligence or mistake, but less than fraud. *Id.* at 1385; *Kress v. Kusmierek (In re Kusmierek)*, 224 B.R. 651, 656-57 (Bankr. N.D. Ill. 1998). Some degree of culpability is required to make a debt nondischargeable as a defalcation under § 523(a)(4), *see Cent. Hanover Bank & Trust Co. v. Herbst*, 93 F.2d 510, 511-12 (2d Cir. 1937), and a debtor's knowledge is relevant, *see Chase Lumber & Fuel Co. v. Koch (In re Koch)*, 197 B.R. 654, 658-59 (Bankr. W.D. Wis. 1996). In sum, in order to establish that a

-24-

debt is nondischargeable for reason of defalcation while acting in a fiduciary capacity, Jabamoni must establish, by a preponderance of the evidence, the existence of an express trust or a fiduciary relation and a debt caused by the Debtor's defalcation while acting as a fiduciary. *See Grogan*, 498 U.S. at 291; *Woldman*, 92 F.3d at 547.

The Court finds that the doctrine of collateral estoppel does not afford Jabamoni entitlement to summary judgment pursuant to § 523(a)(4). Despite an admission in his supporting memorandum that the state court never made a finding that the Debtor was a fiduciary, Jabamoni argues that findings made concerning the underlying business arrangement between the parties prove that the Debtor was in a position of "ascendency" over him and that, thus, a fiduciary relationship existed. The findings in the November 1998 Order, however, fall short of establishing that such a relationship existed or that the Debtor engaged in acts of either fraud or defalcation while acting within the capacity of a fiduciary. Of particular note, none of the state court findings indicates that an express trust was created in the Agreement or that there was such a difference in knowledge or power between the Debtor and Jabamoni that the Debtor held a position of ascendency over Jabamoni. Furthermore, none of the findings states that a fiduciary obligation existed prior to the alleged wrongdoing. Hence, Jabamoni has not proven as a matter of law that he is entitled to summary judgment under § 523(a)(4).

## E.    11 U.S.C. § 523(a)(6)

Section § 523(a)(6) of the Bankruptcy Code provides as follows:

> (a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt–

-25-

> (6) for willful and malicious injury by the
> debtor to another entity or to the property of
> another entity[.]

11 U.S.C. § 523(a)(6). In order to be entitled to a determination of nondischargeability under

§ 523(a)(6), Jabamoni must prove three elements by a preponderance of the evidence: (1)

that the Debtor intended to and caused an injury to Jabamoni's property interest; (2) that the

Debtor's actions were willful; and (3) that the Debtor's actions were malicious. *See Baker*

*Dev. Corp. v. Mulder (In re Mulder)*, 307 B.R. 637, 641 (Bankr. N.D. Ill. 2004); *Glucona*

*Am., Inc. v. Ardisson (In re Ardisson)*, 272 B.R. 346, 356 (Bankr. N.D. Ill. 2001); *Carlson,*

224 B.R. at 662.

"The word 'willful' in (a)(6) modifies the word 'injury,' indicating that

nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or

intentional *act* that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998)

(emphasis in original). Under *Geiger* and its stringent standards, to satisfy the requirements

of § 523(a)(6), Jabamoni must plead and prove that the Debtor actually intended to harm him

and not merely that the Debtor acted intentionally and he was thus harmed. *See id.* at 61-62.

In other words, the Debtor must have intended the tortious consequences of his act. *See id;*

*see also Berkson v. Gulevsky (In re Gulevsky)*, 362 F.3d 961, 964 (7th Cir. 2004). Injuries

either negligently or recklessly inflicted do not come within the scope of § 523(a)(6).

*Geiger*, 523 U.S. at 64.

The Supreme Court did not define the scope of the term "intent" utilized to describe

willful conduct. Recent decisions, however, have found that either a showing of subjective

intent to injure the creditor or a showing of a debtor's subjective knowledge that injury is

-26-

substantially certain to result from his acts can establish the requisite intent required by

*Geiger*. *See Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 463-65 (6th Cir. 1999);

*Tex. by & Through Board of Regents of Univ. of Tex. Sys. v. Walker*, 142 F.3d 813, 823 (5th

Cir. 1998); *Su v. Carrillo (In re Su)*, 259 B.R. 909, 913 (B.A.P. 9th Cir. 2001); *Fidelity Fin.

Servs. v. Cox (In re Cox)*, 243 B.R. 713, 719 (Bankr. N.D. Ill. 2000). Because a person will

rarely admit to acting in a willful and malicious manner, those requirements must be inferred

from the circumstances surrounding the injury. *Cutler v. Lazzara (In re Lazzara)*, 287 B.R.

714, 723 (Bankr. N.D. Ill. 2002).

An act is "malicious" if it is taken "in conscious disregard of one's duties or without

just cause or excuse. . . ." *Thirtyacre*, 36 F.3d at 700. The test for maliciousness under §

523(a)(6) is (1) a wrongful act, (2) done intentionally, (3) which causes injury to the creditor,

and (4) is done without just cause and excuse. *Paul*, 266 B.R. at 696. A debtor does not

have to act with ill will or a specific intent to do harm to the creditor for the conduct to be

malicious. *Thirtyacre*, 36 F.3d at 700. Whether an actor behaved willfully and maliciously

is ultimately a question of fact reserved for the trier of fact. *Id.*

The Court concludes that the doctrine of collateral estoppel does not afford Jabamoni

entitlement to summary judgment under § 523(a)(6). While Jabamoni cites the Court's

holding in *Grynevich v. Grynevich (In re Grynevich)*, 172 B.R. 888 (Bankr. N.D. Ill. 1994),

for the proposition that a debtor commits a willful and malicious injury for purposes of §

523(a)(6) when he sells real estate without authority and converts the proceeds, the Court

finds Jabamoni's reliance on *Grynevich* to be misplaced. In *Grynevich*, the Court's

conclusion that the debtor had committed a willful and malicious injury was made *after* the

-27-

Court had an opportunity to weigh the evidence at trial. *Id.* at 892-93. This conclusion was further supported by the Court giving full faith and credit to the state court determination that the debtor's actions had in fact been "willful." *Id.* at 890.

The Court cannot make the requisite findings under *Geiger* on the record in the motion at bar. None of the findings made in the November 1998 Order comes close to proving that all of the elements required by § 523(a)(6) were actually decided. The November 1998 Order did not state that Jabamoni's injury arose out of a "willful" and "malicious" act of the Debtor, nor did that Order address whether his actions were intentional. To make such a determination based on the limited findings in the November 1998 Order, the Court would have to infer that the Debtor's actions were intentional (and not merely negligent or reckless), that he intended to injure the property interests of Jabamoni and cause him harm at the time of the wrongful conduct, and that the Debtor's actions were both willful and malicious. *Geiger* requires much more than findings of breach of contract and conduct warranting rescission. Accordingly, the Court denies Jabamoni's motion for summary judgment under § 523(a)(6).

## V. CONCLUSION

For the foregoing reasons, the Court denies Jabamoni's motion for summary judgment. However, the Court narrows the issues for trial under Rule 56(d). A trial is set in this matter for May 5, 2006 at 1:00 p.m.

-28-

This Opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate order shall be entered pursuant to Federal Rule of Bankruptcy Procedure 9021.


ENTERED:


DATE: ___1/26/06___            _____
                               John H. Squires
                               United States Bankruptcy Judge


cc: See attached Service List

### SERVICE LIST

#### Connell Jabamoni v. Don J. Zordan

**Adversary No.  05 A 01711**

Don J. Zordan
1256 Townes Circle
Aurora, IL 60502

Bruce Dopke, Esq.
P.O. Box 681246
Schaumburg, IL 60168-1246

Brenda Porter Helms
c/o Albany Bank & Trust
3400 W. Lawrence Avenue
Chicago, IL 60625

Ira Bodenstein, United States Trustee
227 W. Monroe Street
Suite 3350
Chicago, IL 60606

AO 72A
(Rev. 8/82)